NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 260287-U

NO. 4-26-0287

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 7, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* ADOPTION OF M.C., a Minor, | ) | Appeal from the |
| | ) | Circuit Court of |
| (Kelsey C., and Joshua C., | ) | Winnebago County |
| Petitioners-Appellees, | ) | No. 22AD23 |
| v. | ) | |
| William C., | ) | Honorable |
| Respondent-Appellant). | ) | Amy Peterman, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Steigmann and Justice Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding the trial court's judgment terminating respondent's parental rights was not against the manifest weight of the evidence.

¶ 2    In February 2022, petitioners, Kelsey C. and Joshua C., filed a petition for adoption, seeking to adopt M.C. (born in December 2014). Following the fitness and best-interest hearings, the trial court granted the petition and terminated the parental rights of respondent, William C. On appeal, respondent advances numerous arguments that the court's best-interest determination was in error. We disagree and affirm.

¶ 3                        I. BACKGROUND

¶ 4    Respondent challenges only the best-interest determination on appeal. Accordingly, we summarize only the facts necessary to resolve the disputed issues.

¶ 5    In February 2022, petitioners filed a petition for adoption, alleging Kelsey was the

biological mother of M.C. and had been married to Joshua since July 2019. The petition sought to terminate respondent's parental rights, alleging he was unfit pursuant to numerous subsections of 50/1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). The petition asserted, *inter alia*, respondent (1) had not paid or contributed to the support of the minor, (2) had "little if any contact with the minor," and (3) had alcohol and substance abuse issues.

¶ 6 In January 2024, respondent filed an answer, denying the allegations and asserting an affirmative defense that petitioners' allegations were attributable to "circumstances beyond his control or to impediments created by" petitioners due to an order of protection obtained by Kelsey against him in Winnebago County case No. 20-OP-2085.

¶ 7 The matter proceeded to a fitness hearing in May 2024 and was continued numerous times, until the trial court made its ultimate findings in August 2025. The court found respondent's testimony was not credible. The court stated petitioners had met their burden by clear and convincing evidence that respondent was unfit. The court found respondent had failed to (1) maintain a reasonable degree of interest or concern for M.C.'s welfare and (2) make a good faith effort to provide financial support for M.C.

¶ 8 The matter proceeded to a best-interest hearing in January 2026, which occurred over multiple days. However, the report of proceedings provided by respondent only contains an excerpt of Kelsey's testimony from January 15. The record does contain the trial court's decision from February 2026. The court noted the "voluminous" number of hearings and amount of testimony and evidence in the matter. The court stated it had prohibited "additional photos and videos" respondent had sought to introduce as evidence spanning from M.C.'s birth until early 2020. The court noted, even if the evidence had been admitted, it "would not have weighed heavily in terms of the statutory best interest factors because at best those pictures would have been

- 2 -

approximately six years old." The court described the photographs as merely "snippets in time" and emphasized it had permitted respondent and any witnesses on his behalf to testify fully as to any bond or attachments he had with M.C. The court said it relied more on testimonial evidence from the parties than what "could have been gleaned from" the photos that were denied admission into evidence. The court concluded the photos were not valuable to its ultimate decision based on the statutory factors. The court found petitioners to be credible. The court said petitioners had provided for M.C.'s "safety, welfare, clothing, food, shelter, health, and all things including education, sports, [and] medical needs, since at least 2018." The court noted respondent had a relationship with M.C. during his "tender years" but had not provided for any of M.C.'s aforementioned needs since 2018. The court stated M.C. had a relationship with respondent's mother when he was younger, where she provided him clothing and gifts, but qualified it as "sporadic and not consistent." The court said respondent had not paid child support. The court found M.C. to be "an extremely well-rounded child" and attributed his value system to petitioners. The court said M.C. appeared "to have no real recollection" of respondent and did not ask or know about respondent's family. The court noted M.C.'s ties to his siblings in petitioners' home and said, "Joshua is his dad in his mind." The court also addressed respondent's concerns regarding M.C.'s biracial status by stating petitioners had taken steps to support any issues that may arise. The court found M.C.'s sense of attachment resided with petitioners. The court also found M.C.'s sense of security and continuity of affection had been fulfilled by petitioners. The court found M.C.'s need for stability favored petitioners. The court addressed respondent's desire to be involved in M.C.'s life but questioned the specifics of how he would financially provide for M.C. The court said the "order of protection prevented contact [with M.C.] for a period of time, but it did not prevent contact throughout [M.C.'s] entire life." The court also said respondent could have

sought "further actions to seek parenting time during that order of protection" and had failed to provide any financial support during the same period. The court concluded it was in M.C.'s best interest to terminate respondent's parental rights.

¶ 9        This appeal followed.

¶ 10                                    II. ANALYSIS

¶ 11        On appeal, respondent makes numerous arguments. First, he argues the trial court failed to adequately consider the effect of prolonged court-ordered restrictions and years of separation on the parent-child relationship. Correspondingly, he argues fundamental fairness and due process require reversal and remand where the court relied on the deterioration of his relationship with M.C. due to the prolonged court-ordered restrictions affecting his parenting time.

¶ 12        Second, respondent argues the exclusion of photographs and video evidence (1) improperly limited relevant evidence during the best-interest hearing, (2) deprived the trial court of relevant evidence concerning the existence and nature of the parent-child bond, and (3) amounted to an abuse of the court's discretion.

¶ 13        Third, respondent argues the trial court's best-interest determination was against the manifest weight of the evidence. He contends several statutory factors favored not terminating his parental rights, and he had established a parent-child relationship prior to the court-ordered parenting restrictions.

¶ 14        Finally, he argues the cumulative effect of the trial court's errors deprived him of a full and fair best-interest hearing. He reiterates all of his previous arguments in support.

¶ 15        Petitioners contend the record of proceedings is insufficiently complete to support any of respondent's claims of error on appeal. Petitioners also request this court disregard any references in respondent's brief to matters outside the existing record on appeal. Finally,

- 4 -

petitioners argue respondent's contentions on appeal are meritless.

¶ 16    Respondent's reply brief largely disputes petitioners' arguments and contends his arguments do not request this court to reweigh the evidence from the best-interest hearing or substitute our judgment for that of the trial court. Rather, he argues the court's evidentiary rulings "lie[ ] at the heart of this appeal." He also argues the court took judicial notice of the custody proceedings in Winnebago County case No. 20-F-247 and the order of protection case, No. 20-OP-2085, thereby incorporating those proceedings into the factual record.

¶ 17    Before addressing the parties' arguments, we note this case involves a minor and is thus subject to an accelerated appeal under Illinois Supreme Court Rule 311(a) (eff. July 1, 2018). Thus, this court is required to issue its decision within 150 days after the filing of the notice of appeal unless there has been good cause shown. Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018). Here, the notice of appeal was filed on March 9, 2026. Accordingly, we were required to issue a decision by August 6, 2026. Respondent was granted an extension of time to submit his opening brief, which he filed in June. Petitioners submitted their brief later that same month. Respondent then moved for an extension of time to submit his reply brief and to supplement the record with portions of the report of proceedings and various exhibits. We granted respondent's motion, which explains why some of petitioners' arguments focus on matters of the record they did not have at the time they filed their brief. This matter was not submitted to our docket for review until July 9, 2026. Respondent submitted his late reply brief on July 20. Therefore, we find there is good cause for issuing our decision after the 150-day deadline. Additionally, we note petitioners moved for leave to file a sur-reply brief. For the reasons that follow, we affirm the trial court's decision and need not consider petitioners' sur-reply, thereby, we deny their motion. We now address respondent's contentions on appeal.

¶ 18          A. Arguments Concerning Court-Ordered Restrictions Affecting

the Parent-Child Relationship

¶ 19          Respondent begins by noting his due process rights and fundamental liberty interest

in the care and custody of M.C. as his biological parent. See, *e.g.*, *Santosky v. Kramer*, 455 U.S.

745, 753 (1982). He points to the order of protection and family cases as depriving him of years

of maintaining his parent-child relationship with M.C. He argues the inability to establish and

maintain his relationship with M.C. due to these cases was relied upon by the trial court to his

detriment. Specifically, he contends fundamental fairness and his due process rights were violated

as a result.

¶ 20          Respondent is correct the fourteenth amendment of the United States Constitution

(U.S. Const., amend. XIV, § 1) guarantees him due process during proceedings to terminate

parental rights. *In re M.H.*, 196 Ill. 2d 356, 361-62 (2001). "Because the common law did not

provide for the concept of the adoption of children, adoption rights and duties are determined by

statute." *In re Adoption of K.L.P.*, 316 Ill. App. 3d 110, 118 (2000). "Under the Illinois statutory

scheme, an adoption results in a complete and permanent severance of the parental rights between

a biological parent and child." *Id.*

¶ 21          While respondent utilizes the phrases "fundamental fairness" and "due process," he

does not develop a cohesive argument for precisely how the trial court was fundamentally unfair

or violated his due process rights in the adoption proceedings, which is the matter before this court.

Rather, he points to general propositions of law regarding due process. He reiterates the years his

relationship with M.C. was strained due to two other cases that are not before this court on appeal.

¶ 22          The trial court did address these direct contentions in its best-interest

determination. The court noted that for several years, respondent's parent-child relationship with

M.C. was strained due to the other cases. The court also explained respondent was free to seek more parenting time in those cases but had failed to do so. We remind respondent, this court

"is entitled to have the issues clearly defined and supported by pertinent authority and cohesive arguments; it is not merely a repository into which an appellant may 'dump the burden of argument and research,' nor is it the obligation of this court to act as an advocate or seek error in the record." *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009) (quoting *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993)).

Additionally, we will not "research the issues on the appellant's behalf." *Gakuba v. Kurtz*, 2015 IL App (2d) 140252, ¶ 19.

¶ 23        Because respondent has failed to identify a cognizable error of fundamental fairness or due process, we find no basis to conclude error occurred. See *Sherwood Commons Townhome Owners Ass'n v. DuBois*, 2020 IL App (3d) 180561, ¶ 18 (stating the appellant "has the burden of establishing any error"). Moreover, "when an appeal is taken from a specified judgment, the appellate court acquires no jurisdiction to review other judgments or parts of judgments that are not specified in or inferred from the notice of appeal." *Fitch v. McDermott, Will & Emery, LLP*, 401 Ill. App. 3d 1006, 1014 (2010). Respondent's notice of appeal in this case specifically identifies the adoption proceedings and complains of the judgment terminating his parental rights from February 2026. We have no jurisdiction nor a need to review other judgments not before us. See *Wilson v. Illinois Benedictine College*, 112 Ill. App. 3d 932, 936 (1983) ("A reviewing court will not consider questions or contentions which are not essential to the determination of the case before it.").

¶ 24                    B. Arguments Concerning the Exclusion of Evidence

¶ 25           Next, respondent argues the exclusion of evidence, namely, photos and videos, affected the trial court's ability to evaluate M.C.'s best interest and the parent-child bond. He also argues the court abused its discretion when granting petitioners' motion *in limine* to exclude the photos and videos because it deprived the court of extensive evidence demonstrating the parent-child bond. Finally, he argues the excluded evidence was relevant to several of the statutory best-interest factors. Along with these arguments, respondent cites numerous cases for general propositions of law regarding parental rights and termination proceedings. He also relies heavily on the parenting-time restrictions he argued above.

¶ 26           Regarding excluded evidence, our supreme court has explained:

               "Generally, evidentiary motions, such as motions *in limine*, are directed to the trial court's discretion, and reviewing courts will not disturb a trial court's evidentiary ruling absent an abuse of discretion. [Citation.] Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence. [Citation.] A trial court may reject offered evidence on grounds of irrelevancy if it has little probative value due to its remoteness, uncertainty, or possibly unfair prejudicial nature."
               *People v. Harvey*, 211 Ill. 2d 368, 392 (2004).

¶ 27           While respondent contends the evidence was relevant to the trial court's best-interest determination, the court directly explained the evidence offered was not relevant to its findings. The court said it had reviewed the excluded evidence, nonetheless, and found it to have

little bearing on the statutory factors. "The abuse of discretion standard is the most deferential standard" of review. *People v. Morgan*, 2025 IL 130626, ¶ 23.

> "The inquiry, under this most deferential standard, is not whether the reviewing court would have made the same decision if it were acting as the [trial] court. [Citation.] Rather, the question is whether the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." (Internal quotation marks omitted.) *Id.*

¶ 28 The trial court was clear that the testimonial evidence was far more impactful on its decision, and the excluded evidence would not have swayed its opinion. Because the evidence would have had no consequence on the court's best-interest determination, we find the court's decision was not arbitrary, fanciful, or unreasonable.

¶ 29          C. Arguments Concerning the Best-Interest Determination

¶ 30 Next, respondent argues the trial court's best-interest determination was against the manifest weight of the evidence. Specifically, he argues the evidence showed he had established a relationship with M.C. and initiated custody proceedings in case No. 20-F-247 to maintain his involvement in M.C.'s life. He then repeats all of his arguments regarding parenting restrictions from the order of protection case and the exclusion of evidence at the hearing. He also claims, without any elaboration, "several" of the statutory factors favored preserving the parent-child relationship.

¶ 31 After a trial court finds a parent is unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *In re D.T.*, 212 Ill. 2d 347, 352 (2004). The trial court's best-interest determination will not be reversed unless it is against the

manifest weight of the evidence. *In re J.B.*, 2019 IL App (4th) 190537, ¶ 33. "A best-interest determination is against the manifest weight of the evidence only if the facts clearly demonstrate that the trial court should have reached the opposite result." *Id.*

¶ 32        At the best-interest hearing, the petitioner is required to prove by a preponderance of the evidence that termination of parental rights is in the child's best interest. See *D.T.*, 212 Ill. 2d at 367. The trial court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act of 1987 (705 ILCS 405/1-3(4.05) (West 2024)). However, the court is not required to make a specific reference to each factor in its findings. *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. These statutory factors include:

> "(1) the child's physical safety and welfare; (2) the development of
> the child's identity; (3) the child's background and ties, including
> familial, cultural, and religious; (4) the child's sense of attachments,
> including love, security, familiarity, and continuity of affection, and
> the least-disruptive placement alternative; (5) the child's wishes;
> (6) the child's community ties; (7) the child's need for permanence,
> including the need for stability and continuity of relationships with
> parental figures and siblings; (8) the uniqueness of every family and
> child; (9) the risks related to substitute care; and (10) the preferences
> of the persons available to care for the child." *In re Jay. H.*, 395 Ill.
> App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-3(4.05) (West
> 2008)).

¶ 33        The record shows the trial court considered the statutory factors and identified numerous specific factors when finding the evidence supported terminating respondent's parental

rights. Respondent's arguments do not identify a single specific factor in his favor, despite claiming "several" factors were in his favor. See *Housing Authority of Champaign County v. Lyles*, 395 Ill. App. 3d 1036, 1040 (2009) (finding unsupported arguments do not merit consideration on appeal). Moreover, the court considered numerous nonstatutory factors, such as respondent's period of restricted parenting time and sociocultural concerns around M.C.'s biracial status.

¶ 34 Many of respondent's contentions on appeal center around his frustrations with maintaining a parent-child relationship with M.C. But "at a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364. The trial court carefully considered the testimony and other evidence before it. We afford great deference to a court's best-interest findings because it sits in a superior position to observe the witnesses, judge credibility, and assess the evidence. *In re C.P.*, 2019 IL App (4th) 190420, ¶ 71. We are thankful the court thoughtfully explained the rationale for its decision, which we found helpful in resolving the issues before us, given the limited record. We find the court's best-interest determination was not against the manifest weight of the evidence.

¶ 35 D. Arguments Concerning Cumulative Error

¶ 36 Lastly, respondent argues that, even if we do not find any of the individual claims of error above warrant reversal, the cumulative effect of the claimed errors deprived him of a full and fair best-interest hearing. Respondent then reiterates his previous arguments and again cites more general principles of law regarding parental rights and termination proceedings.

¶ 37 To be clear, cumulative error, "as its names suggests, *** can occur only when there is more than one error." *People v. Quezada*, 2024 IL 128805, ¶ 46. We have already

addressed respondent's contentions on appeal and found no error. Therefore, we conclude there can be no cumulative error.

¶ 38                                    III. CONCLUSION

¶ 39          For the reasons stated, we affirm the trial court's judgment.

¶ 40          Affirmed.